## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**MICHAEL A AMEN** and<br>**CHERYLL K AMEN**,<br><br>Debtors. | Case No. **12-61225-7** |
| **JOSEPH V. WOMACK**,<br><br>Plaintiff.<br><br>-vs-<br><br>**BAR NOTHING RANCH PARTNERSHIP**<br>and **JOHN DOES 1-10**,<br><br>Defendants. | Adv No. **13-00034** |

## MEMORANDUM of DECISION

At Butte in said District this 20th day of January, 2015.

The Court held a trial in this Adversary Proceeding on October 27 and 28, 2014, in Billings. Trent M. Gardner of Goetz, Baldwin & Geddes, P.C., Bozeman, Montana, represented the Chapter 7 Trustee and Plaintiff, Joseph V. Womack; James A. Patten and W. Scott Green of Patten, Peterman, Bekkedahl & Green, P.L.L.C., Billings, Montana, represented Defendant Bar Nothing Ranch Partnership. The Court approved the parties' Final Pretrial Order on October 21, 2014. Debtor Michael Amen, Elwood "Butch" Schwers, Dan Lowe, Valerie Cox and W. Scott

1

Green testified.  The record of Exhibits filed at docket no. 111 reflects that Plaintiff's Exhibits 1 through 12, 16, 18, 19, 20, 22, 26, 28 and 29, and Defendant's Exhibits A, C, E through N, Q, R, W, X, Y, BB, CC, DD, RR, SS, TT and UU were admitted into evidence.

At the conclusion of the parties' cases-in-chief the Court granted the parties time to file post-trial briefs, which have been submitted and reviewed by the Court along with the record and applicable law.  This matter is ready for decision.

This Court has jurisdiction of the above-captioned Chapter 7 case and the Trustee's Objection to Bar Nothing Ranch Partnership's Proof of Claim under 28 U.S.C. § 1334(a).  The Trustee's Objection to Bar Nothing Ranch Partnership's claim and request to avoid Bar Nothing Ranch Partnership's lien are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (K).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052 (applying FED.R.CIV.P. 52 in adversary proceedings).

## BACKGROUND

### Lowe/Amen, LLC

Debtor Michael Amen ("Amen") was formerly a member of Lowe/Amen, LLC, a Montana limited liability company, which according to the articles of organization filed with the Montana Secretary of State, was managed by its members.  The other member of Lowe/Amen, LLC was Lowe Property Holdings, LLC.  Dan Lowe is the managing member of Lowe Property Holdings, LLC.  Dan Lowe was primarily responsible for the management of Lowe/Amen, LLC.

Lowe/Amen, LLC was formed in approximately 2006 and was governed by an Operating Agreement that was signed by Amen and Dan Lowe on April 27, 2006.  Attorney Bruce Fain, an attorney who had done work for Amen for approximately 30 years, handled the formation of

2

Lowe/Amen, LLC for Amen.  Bruce Fain did not draft the Lowe/Amen, LLC Operating Agreement, but he reviewed it on Amen's behalf.

As set forth in paragraph 1.3 of the Operating Agreement, the initial distributional interests of Amen and Lowe Property Holdings, LLC was 50% each, but the distributional interests would thereafter be "adjusted to equal the percentage of the total capital of the Company contributed by each Member."  Paragraph 3.3 of the Operating Agreement also provided:

> [T]he expenses of the Company are:  mortgage payment of approximately $20,000.00; real property taxes; water charges; and life insurance on each member. The Company anticipates receiving agricultural rental income of approximately $6,400.00.  Additional contributions of capital by the Members shall be required only for these specific expenses and for any other expenses agreed upon by both Members.  If there is not adequate cash flow from Company operations to meet the Company's cash requirements for these specific expenses, then each Member shall be required to make additional capital contributions in proportion to said Member's capital account.
>
> Should any member not make a required capital contribution then the other Member shall have the option of paying the unpaid contribution.  The additional contribution shall be a loan to the non-paying member . . .  If the loan is not repaid in full within 90 days after the date the loan is made, then the loan balance shall be paid by transferring the amount of the loan balance from the capital account of the non-paying member into the capital account of the loaning member(s), and adjusting the distributional interests of the non-paying member and the lending member as provided in Section 1.3 above.

Dan Lowe testified that as of 2010, Amen was not paying his share of the annual payments to Lowe/Amen, LLC and that as a result, "there was a shifting of shares" that caused Dan Lowe to have a larger percentage of ownership than Amen in Lowe/Amen, LLC.  This "shifting of shares" is not reflected in Lowe/Amen, LLC's 2008, 2009 or 2010 income tax returns, which all reflect Amen and Lowe Property Holdings as each having a 50% interest in Lowe/Amen, LLC's profits, losses and capital.

Section 5.1 of the Lowe/Amen, LLC Operating Agreement also provided that certain major

3

business decisions, such as pledging, mortgaging, or otherwise encumbering Lowe/Amen, LLC's assets, required the affirmative vote of its members contributing fifty-one percent or more of the capital of Lowe/Amen, LLC.  The Operating Agreement also precluded members from assigning their interest in Lowe/Amen, LLC without the written consent of the other member.

Lowe/Amen, LLC was formed for the purpose of "purchasing and renting real properties as long term investments, and in any other lawful activity upon which all Members may agree in writing."  The Operating Agreement specifically provides that Lowe/Amen, LLC would purchase the following described real property from Dan Lowe Construction, Inc. for $320,000.00:

Parcel A:

That part of the NE ¼ SE ¼ of Section 17, Township 1 South, Range 25 East, of the Principal Montana Meridian, in Yellowstone County, Montana, described as Tract 1-A, of Amended Plat of Tract 1 of Certificate of Survey No. 2042 on file in the office of the Clerk and Recorder of said County, under Document # 1381180.

Parcel B:

Township 1 South, Range 25 East, of the Principal Montana Meridian, in Yellowstone County, Montana.

Section 17: NW ¼ SE ¼.

Dan Lowe characterized the property as farmland and testified that Lowe/Amen, LLC kept the property as farmland.  Parcel A was approximately 24 acres and Parcel B was approximately 40 acres.  At the time the above-described property was transferred to Lowe/Amen, LLC, it was subject to a mortgage in favor of First Interstate Bank dated October 17, 2003, as modified on February 4, 2004, July 30, 2004, and August 20, 2004.  On or about April 27, 2006, Dan Lowe and Amen executed a Modification of Mortgage which removed Dan Lowe Construction, Inc. as the borrower and substituted Lowe/Amen, LLC as the borrower on the First Interstate Bank mortgage.

4

### Bar Nothing Ranch Partnership

Butch Schwers ("Schwers") and his son have been partners in Bar Nothing Ranch Partnership ("Bar Nothing") for fifteen to twenty years.  In approximately 2000, Amen started feeding cattle for Schwers and shortly thereafter, Schwers started buying cattle for Amen.  According to Schwers, he had an excellent relationship with Amen until approximately 2009, when money became an issue.  Schwers explained that between 2006 and 2009, Amen was making payments on the amounts he owed to Bar Nothing but by late 2009, the amount of debt Amen owed to Bar Nothing had grown substantially.  Amen acknowledges that in late 2009 and early 2010 he was experiencing both major health and financial issues.

### Bar Nothing's Collection Efforts Against Amen

In early 2010, Schwers consulted with attorney W. Scott Green ("Green") of Patten, Peterman, Bekkedahl & Green, PLLC about collecting the delinquent debt owed by Amen.  On January 14, 2010, Green filed a complaint that names Schwers as the plaintiff and Amen as a defendant seeking the sum of $320,133.09.  Schwers amended the complaint on January 21, 2010, to substitute Bar Nothing as the proper plaintiff.

According to Schwers, Amen wanted to work out an arrangement to repay Bar Nothing because he did not want notice of the lawsuit published in the newspaper.  At that time, Amen did not personally own any property that was unencumbered, but Schwers testified that Amen had mentioned that he was a member of Lowe/Amen, LLC.  Amen told Schwers that if he could withdraw from Lowe/Amen, LLC, he would then possibly own a piece of unencumbered real property that he could use to secure the amount owed to Bar Nothing.  Amen went so far as to drive Schwers by Lowe/Amen, LLC's real property.

5

Even though Amen and Dan Lowe had not discussed dissolving Lowe/Amen, LLC, and even though Amen had not hired an attorney to represent him with respect to the Bar Nothing lawsuit or debt, Valerie Cox, Green's paralegal, sent Bruce Fain an email dated January 25, 2010, that was accompanied by a promissory note and Montana trust indenture. Green handwrote on his file copy of the email that "we will require mortgage insurance" and "the property will need to be transferred to Mike Amen." That information was relayed by Valerie Cox to Bruce Fain in a separate email sent later on January 25, 2010. Nothing in the record suggests that Bruce Fain responded to Valerie Cox's emails and on April 6, 2010, Amen signed a document stating he was not represented by counsel.

Consistent with his notes, Green drafted a promissory note in the amount of $320,133.09, a realty transfer certificate to transfer property from Lowe/Amen, LLC to Amen and a Montana trust indenture, whereby Amen would grant Bar Nothing a security interest in Parcel A of Lowe/Amen, LLC's real property to secure a debt in the amount of $320,133.09. Amen testified that under the terms of the Lowe/Amen, LLC Operating Agreement, he knew he lacked the authority to transfer property from Lowe/Amen, LLC to himself without Dan Lowe's consent.

In late March of 2010, Amen sought to sell some cattle he had purchased from Bar Nothing in November of 2009. According to an Agreement and Letter of Understanding between Schwers and Patrick Casper of U.S. Bank dated March 30, 2010, Schwers and U.S. Bank agreed that Bar Nothing would receive $81,236.63 from the sales proceeds and U.S. Bank would receive the remainder of $59,650.86. To account for the foregoing transaction, Green revised his promissory note between Amen and Bar Nothing to reflect a debt owed of $243,668.46.

### Amen's Execution of a Promissory Note

Schwers and Amen met with Green on April 5, 2010. The three discussed at that time

reducing the interest rate from 7% per annum to 5% annum and reducing the principal amount of the promissory note from $320,133.09 to $238,896.46 to reflect a credit for the amount Bar Nothing received under the March 30, 2010, Agreement and Letter of Understanding with U.S. Bank.  Bar Nothing's Exhibit JJ reflects that the promissory note was revised on April 6, 2010, at 1:46:43 PM to reduce the principal amount to $243,668.46 and to reduce the interest rate to 5% per annum.

Schwers and Amen met again at Green's law office on April 6, 2010.  During that meeting, Amen was presented with a Promissory Note between himself and Bar Nothing, Exhibit 2, a Montana Trust Indenture between himself and Bar Nothing, Exhibit W, and a Warranty Deed transferring Parcel A from Lowe/Amen, LLC to Amen.  *See* Exhibit X.  Amen signed the Promissory Note, but refused to sign the Montana Trust Indenture or the Warranty Deed.  Green testified that he did not know why Amen would not sign the Montana Trust Indenture or the Warranty Deed on April 6, 2010.

Schwers and Amen each testified that they questioned Green on April 6, 2010, as to whether Dan Lowe would need to sign the documents and Amen testified that he had given a copy of the Lowe/Amen, LLC Operating Agreement to either Schwers or Green.  Green countered that he was not at the April 6, 2010, meeting when Amen signed the Promissory Note, that Amen never mentioned that Dan Lowe needed to sign the documents or that Amen lacked the authority to sign the warranty deed, and that Green had not, as of April 6, 2010, seen a copy of the Lowe/Amen, LLC Operating Agreement.

As noted earlier, Amen did not sign the trust indenture or the warranty deed on April 6, 2010, because he believed he lacked the authority to do so.  Green acknowledged such in a letter he sent to Schwers on April 6, 2010, which reads in part: "Valerie relayed your phone message that

7

you were not happy with the way today's meeting with Mike Amen turned out. We could have had it done today if Mike would have been agreeable to sign. We did not need Dan Lowe's signatures - - only Mike wanted his signatures."[1]  Green continued to maintain during his testimony that it was his understanding that any member of a member-managed limited liability company could sign any deed transferring an interest in land and that Dan Lowe would not have had to sign the warranty deed transferring the property from Lowe/Amen, LLC to Amen.

In addition, a handwritten notation on Bar Nothing's Exhibit W states that on "4/6/10 WSG gave originals to Mike Amen." Valerie Cox testified that "WSG" were the initials for W. Scott Green. Bar Nothing's Exhibit NN reflects that Green revised the Montana Trust Indenture on Tuesday, April 13, 2010, at 5:08:49 PM. That revision still showed Amen as the grantor.

**Amen's Execution of a Montana Trust Indenture on Behalf of Lowe/Amen, LLC**

Additional discussions ensued and Green eventually advised Amen that Amen could encumber the Lowe/Amen, LLC property because Dan Lowe had already cross-collateralized the property to secure his personal debts. Relying on the statements made by Green, Amen signed on April 23, 2010, a Consideration Agreement and a Montana Trust Indenture between Lowe/Amen, LLC and Bar Nothing wherein Lowe/Amen, LLC, as grantor, gave Bar Nothing a security interest in:

> That part of the NE ¼ SE ¼ of Section 17, Township 1 South, Range 25 East, of the Principal Montana Meridian, in Yellowstone County, Montana, described as Tract 1-A, of Amended Plat of Tract 1 of Certificate of Survey No. 2042 on file in

---

[1]  Amen testified at trial that he questioned Green whether he had the authority to sign any security documents on behalf of Lowe/Amen, LLC. Bar Nothing's counsel sought to impeach Amen on this point, suggesting that Amen could not recall whether he had relayed such a concern to Green prior to April 6, 2010. Bar Nothing's attempt to impeach Amen fails because Green's letter to Schwers dated April 6, 2010, acknowledges that Amen wanted Dan Lowe's signature.

the office of the Clerk and Recorder of said County, under Document # 1381180. The Montana Trust Indenture states that its purpose is to secure "[p]ayment of the principal sum of $243,668.46, with interest thereto, according to the terms of a promissory note, dated April 6, 2010, (and any extensions and/or renewal or modifications thereof), made by Grantor and payable to the order of Beneficiary on or before December 31, 2012[.]"

Michael also executed on April 23, 2010, a Consideration Agreement wherein he, as a Member of Lowe/Amen, LLC, authorized Lowe/Amen, LLC to grant the Trust Indenture as security for the April 6, 2010, Promissory Note.

In response to interrogatory number 11 in the Trustee's First Discovery Requests, Bar Nothing represented that "Green contacted Dan Lowe to verify Amen's authority to execute the Trust Indenture for Lowe/Amen, LLC." At trial, Green testified that he called Dan Lowe in early 2010 to discuss Lowe/Amen, LLC. Green later clarified that he did not actually speak to Dan Lowe until a year or two later, but that he left a message for Dan Lowe in 2010. Dan Lowe testified that he did not recall receiving a voice message from Green. Dan Lowe also testified that he did in fact talk to Green at a later date. Dan Lowe testified that Green asked some general questions about Amen and Lowe/Amen, LLC. Green never asked Dan Lowe about Amen's authority to act on behalf of Lowe/Amen, LLC and never mentioned the Trust Indenture. However, Dan Lowe told Green that Lowe/Amen, LLC was governed by an operating agreement and that under the terms of the operating agreement, he owned more than 51% of Lowe/Amen, LLC, because of a shifting of shares.

## Post Trust Indenture Proceedings

Dan Lowe testified that the first time he and Amen discussed dissolving or dividing Lowe/Amen, LLC's property was in March or April of 2011. Dan Lowe had not had contact with

9

Amen for some time, prompting Dan Lowe to send Amen a letter on March 24, 2011, that read: "Mike I have been trying to reach you by phone for months with no success.  We need to get together and make some arrangements for Lowe/Amen.  I have been carrying this financial burden to [sic] long."  Amen responded by letter in April to Dan Lowe's letter, proposing to exchange irrigation pipe for the contributions he owed to Lowe/Amen.  Dan Lowe sent Amen another letter on October 1, 2011, stating he had no interest in Amen's proposal.  Dan Lowe's October 1, 2011, letter also read in part: "I'm sorry that you can't seem to communicate with me on our business of Lowe/Amen. . .  I had no choice except to meet with Carol Hardy who wrote our operating agreement and farm lease documents to know how to proceed."  Dan Lowe and Amen never reached an agreement on how to proceed, divide or dissolve Lowe/Amen, LLC.

Shortly after learning of Bar Nothing's lien against Parcel A, Dan Lowe caused Lowe/Amen, LLC, on July 18, 2012, to commence a proceeding against Bar Nothing in the Thirteenth Judicial District Court of Montana, Cause No. DV-12-0868.  Lowe/Amen, LLC commenced that action in an effort to, *inter alia*, quiet title with respect to Bar Nothing's alleged unauthorized lien and to invalidate its unauthorized security interest against Parcel A.

Debtors Michael and Cheryll Amen filed a voluntary Chapter 13 bankruptcy petition on July 27, 2012.  Debtors' case was converted to Chapter 7 of the Bankruptcy Code on October 5, 2012, and Womack was appointed Chapter 7 Trustee on that same date.

During the course of Debtors' bankruptcy case, Amen has learned that Dan Lowe did not cross-collateralize Lowe/Amen, LLC's property to secure personal debts and that Amen did in fact lack the authority to sign the Trust Indenture on behalf of Lowe/Amen, LLC.  After Debtors filed bankruptcy, Lowe/Amen, LLC and Lowe Property Holdings, LLC filed Proof of Claim Nos. 18 and 19 on February 22, 2013, each asserting an unsecured claim against Debtors in the amount of

10

$395,761.80.  Bar Nothing filed Proof of Claim No. 8 on September 10, 2012, asserting a secured

claim in the amount of $247,406.94, secured by Parcel A.  Bar Nothing amended Proof of Claim

No. 8 on October 27, 2014.  The Promissory Note between Amen and Bar Nothing, Exhibit 2, and

the Trust Indenture between Lowe/Amen, LLC and Bar Nothing, Exhibit 3, are attached to Proof of

Claim No. 8.

      Womack and Lowe/Amen, LLC commenced this Adversary Proceeding against Bar

Nothing on September 11, 2013, requesting various relief, including a request that the Court

remove Bar Nothing's Trust Indenture on Parcel A from the county records and otherwise hold that

the Trust Indenture is cancelled, void, unenforceable, and of no effect.  The complaint against Bar

Nothing references an October 1, 2013, Settlement Agreement and Release between Lowe Property

Holdings, LLC, Lowe/Amen, LLC, Womack, and Lazy JC Ranch, LLC.

      Womack's settlement with Lowe Property Holdings, LLC, Lowe/Amen, LLC, and Lazy JC

Ranch, LLC resolved Lowe/Amen, LLC's Proof of Claim No. 18, Lowe Property Holdings, LLC's

Proof of Claim No. 19, and Lazy JC Ranch, LLC's Proof of Claim No. 20.  Pursuant to the

settlement,

    a.    Womack transferred Debtor Michael Amen's membership interest in Lowe/Amen,

        LLC to Lowe Property Holdings, LLC free and clear of all liens and encumbrances

        pursuant to 11 U.S.C. § 363(b) and (f);

    b.    Lowe/Amen, LLC transferred Parcel A to Womack free and clear of the FIB

        Mortgage, but subject to Bar Nothing's claimed Trust Indenture; and

    c.    Lowe/Amen, LLC transferred to Womack all claims, rights and defenses against

        Bar Nothing related to the Bar Nothing Trust Indenture.

In a limited objection to the aforementioned settlement, Bar Nothing did not oppose

11

conveyance of Parcel A to Debtors' bankruptcy estate or the relinquishment of the Bankruptcy

Estate's membership and distributional interest in Lowe/Amen, LLC. Bar Nothing's sole objection

to approval of the settlement was that the settlement provided validity to the Lazy JC Ranch trust

indenture, which, according to Bar Nothing, resulted in different treatment between similarly

situated creditors. Counsel for Bar Nothing argued:

> If the Bar Nothing lien in invalid, so is the Lazy JC lien. If their liens are invalid,
> Bar Nothing and Lazy JC would have unsecured claims and would be entitled to
> any distribution based upon their allowed unsecured claims. By granting Lazy JC
> a lien through the settlement, Lazy JC's interests are elevated and its share of
> distribution will be greater, even though Bar Nothing and Lazy JC are similarly
> situated.

The Court disagreed with Bar Nothing's argument and on November 15, 2013, entered an

Order in Debtors' main bankruptcy case approving the settlement agreement and release with

Lowe/Amen, LLC, Lowe Property Holdings, LLC and Lazy JC Ranch, LLC. In that same Order,

the Court authorized Womack to execute such agreements and instruments required to effect

settlement under the settlement agreement and release without further proceedings and provided

that the transfer of Debtors' membership in Lowe/Amen, LLC to Lowe/Amen, LLC, as

contemplated in the approved settlement agreement and release, was free and clear pursuant to 11

U.S.C. § 363(f). That decision was not appealed and is final.

## CONTENTIONS OF THE PARTIES

The parties agree that the Trust Indenture signed by Amen on April 23, 2010, between

Lowe/Amen, LLC as grantor and Bar Nothing as beneficiary, secures a $243,668.46 promissory

note "made by Grantor payable to the order of Beneficiary on or before December 31, 2012[.]"

The parties also agree that there is no promissory between Lowe/Amen, LLC and Bar Nothing,

that Lowe/Amen, LLC has never had any dealings with Bar Nothing and that Lowe/Amen, LLC

12

has never owed Bar Nothing any money.  Thus, Plaintiff, citing this Court's decision in *B-Bar Tavern, Inc. v. Prairie Mountain Bank (In re B-Bar Tavern, Inc.)*, 506 B.R. 879 (Bankr. D.Mont. 2013), argues that the Trust Indenture signed by Amen on April 23, 2010, is invalid and unenforceable because the Trust Indenture secures a non-existent debt.  The Plaintiff also maintains that the Trust Indenture is invalid and unenforceable because Amen lacked authority to mortgage or encumber Lowe/Amen, LLC's property.  Finally, Plaintiff argues that Bar Nothing is an unsecured creditor who should share in any distributions equally with other unsecured creditors.

Bar Nothing counters that the Trust Indenture is valid and enforceable.  Citing MONT. CODE ANN. ("MCA") § 35-8-301, Bar Nothing contends that a member of a limited liability company can bind the limited liability company and that restrictions on the authority to bind a limited liability company in an operating agreement do not affect the apparent authority of members to bind a company to a third party without notice of that restriction.  Bar Nothing also argues that the Trust Indenture contains a mutual mistake of Amen and Bar Nothing and should be reformed to correct the mutual mistake.  Finally, Bar Nothing contends that Plaintiff's settlement with Lowe Property Holdings, LLC, Lowe/Amen, LLC, and Lazy JC Ranch, LLC is consistent with Amen's prior representations that Lowe/Amen, LLC was in the process of dissolution, that Amen had the authority to encumber Parcel A and that he would soon be receiving Parcel A.  Bar Nothing contends the transfer of Parcel A from Lowe/Amen, LLC to Debtors' bankruptcy estate cures any scrivener's errors in the Trust Indenture.

### APPLICABLE LAW and DISCUSSION

In the approved Final Pretrial Order, Plaintiff withdrew Counts III, V and VII of his First

13

Amended Complaint.  Plaintiff also did not present evidence to prove a claim for avoidance or recovery of a fraudulent transfer.  Thus, Court IV of Plaintiff's complaint is dismissed.  Finally, while Plaintiff was pursuing an award of fees and costs in the Final Pretrial Order, Plaintiff did not address that issue at trial or in his Post-Trial Memorandum.  Thus, the Court deems that request abandoned.

### Amen's Authority to Bind Lowe/Amen, LLC

Plaintiff first contends that Amen did not have actual authority under the Lowe/Amen, LLC Operating Agreement to encumber Lowe/Amen, LLC's property without Lowe Property Holdings, LLC's consent.  Plaintiff also argues that Amen did not have apparent authority to encumber Lowe/Amen, LLC's property because:  (1) encumbering real property was not for apparently carrying on in the usual way of Lowe/Amen, LLC's business; and (2) under the facts of the case, Bar Nothing knew or should have known that Amen lacked authority to encumber Lowe/Amen, LLC's property.  Bar Nothing does not dispute that Amen lacked the actual authority to encumber Lowe/Amen, LLC's property under Lowe/Amen, LLC's Operating Agreement.  Bar Nothing instead argues that it lacked actual knowledge of Amen's limited authority and that mortgaging land is not unusual or extraordinary.

Both parties agree that the agency powers of members of limited liability companies is governed by MCA § 35-8-301:

> [A] member is an agent of the limited liability company for the purpose of its business or affairs and the act of a member, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has knowledge of the fact

14

that the member has no such authority.

MCA § 35-8-301 also provides:

> (3) An act of a manager or a member that is not apparently for carrying on in the usual way the business of the limited liability company does not bind the limited liability company, unless authorized in accordance with the articles of organization or the operating agreement, at the time of the transaction or at any other time.

> (4) An act of a manager or member in contravention of a restriction on authority may not bind the limited liability company to persons having knowledge of the restriction.

Bar Nothing concedes that "[i]f a member of a limited liability does something in an unusual way, it does bind the company if authorized under the articles or organization or the operating agreement."  Post-Trial Brief, dkt 114, p.8.  Relying on *Baltrusch v. Baltrusch*, 2003 MT 357, 319 Mont. 23, 83 P.3d 256, and attempting to distinguish *Howell v. Dowling*, 1992 Mont. Dist. LEXIS 289, Bar Nothing proceeds to maintain that pledging Lowe/Amen, LLC's property to secure Amen's personal debt was for carrying on in the usual way the business of Lowe/Amen, LLC.  *Baltrusch* and *Howell* are unpersuasive.

In *Howell*, two of three partners in a partnership, in an attempt to avoid a potential foreclosure, discounted a sublease and sale agreement.  Howell, the third partner in the partnership, refused to be bound by the discount agreement.  Some of the discount agreement proceeds were used to pay partnership debts and another $36,500 was loaned to another entity in which Howell had a 17% ownership interest.  The court in *Howell* concluded that any benefit to Howell from the discount agreement was incidental and that the discount action taken by the two partners was not apparently for the carrying on in the usual business of the partnership, reasoning:

15

The discount action disposed of the only significant asset of the partnership. The LBM Co. did not routinely hold contracts and negotiate discounts. Howell had not authorize Grubbs and Boorman to act on his behalf and DHW were well aware of Howell's position.

In contrast, two brothers were members of a partnership in *Baltrusch*; Otto devoted his time to managing the company's farming enterprises while William devoted his time to managing the construction companies of the partnership.  Otto eventually concluded that the leasing options on two leases were no longer economically advantageous and after consulting with an attorney, transferred two of the leases to an entity owned by his two sons.  In affirming the state district court's ruling that Otto's transfer of the two leases was for carrying on in the usual way the business of the partnership, the Supreme Court of Montana reasoned:

> Otto did not act out of his authority as a partner. Otto alone took care of the Leases for over 30 years, and did not bind William to something he knew William did not desire, like the partner in [*Schrammeck v. Federal Sav. & Loan Ins*. (1993), 258 Mont. 391, 853 P.2d 702] did. William conceded that Otto alone managed the Leases. Otto consulted an attorney regarding his options for the Leases before determining that transfer of the Leases was the best option. Only after he discussed with his attorney this fact did he ask Gary about transferring the Leases to Gary and Greg. Gary and Greg had farmed the Leases for years, and the landlord of the Graham lease in fact testified that she was satisfied in having them take over the Leases. In addition, the transfer of the Leases did not harm the Farm Partnership, as the partner's actions in *Schrammeck* did, for continued farming on the Leases was no longer economically viable under the ASCS program. Unlike the partner in *McNabb*, the ordinary course of the Farm Partnership consisted of Otto managing the Leases and Gary and Greg farming the Leases. The transfer of the Leases, therefore, was not out of the ordinary, like the partner's actions were in *McNabb*.

*Baltrusch*, 2003 MT 357 at ¶ 45.

After citing to *Baltrusch* and *Howell*, Bar Nothing summarily concludes that Amen's pledging of Lowe/Amen, LLC's property to secure Amen's personal debt did not financially harm Lowe/Amen, LLC.  Bar Nothing also asserts:

16

> There was no testimony that entering into a promissory note and trust indenture was not the usual way to conduct business. The only testimony on the business of Lowe/Amen was Lowe's conclusory statement that mortgaging property was not Lowe/Amen's "usual course of business." Tr.ll2.  The evidence shows that the land was farmed by Amen and that Lowe/Amen was in the business of leasing its land; mortgaging land is not unusual or extraordinary, particularly by the tenant and co-member of the owner.  As noted, Lowe did the same thing himself.

Post-Trial Brief, dkt 114, p.9.  In the above passage, Bar Nothing first asserts that no testimony was presented on whether Amen's actions were apparently for carrying on in the usual way the business or affairs of Lowe/Amen, LLC.  Then, in the very next sentence, Bar Nothing acknowledges that Dan Lowe had testified that mortgaging property was not Lowe/Amen, LLC's ususal course of business.[2]  Dan Lowe's testimony, which Bar Nothing characterizes as "conclusory," is consistent with Lowe/Amen, LLC' purpose, as set forth in its Operating Agreement, which includes purchasing and renting real properties, but not encumbering such properties for personal debt.

The Court also disagrees that Amen's use of Lowe/Amen, LLC's property as security for his personal debts did not harm Lowe/Amen, LLC.  Once the Trust Indenture was recorded, Lowe/Amen, LLC's property was subject to additional debt of $243,668.46.  Bar Nothing's contention that the lien did not cause financial harm to Lowe/Amen, LLC is without merit.

Finally, Bar Nothing argues that it was okay for Amen to use Lowe/Amen, LLC's property to secure personal debt because Dan Lowe did the same thing.  That statement is false. The record shows that Lowe/Amen, LLC agreed, through Dan Lowe and Amen, to purchase

---

[2]  Bar Nothing argues in its Post-Trial Brief that "[a] trust indenture is a usual way to collateralize real property."  While that may be so, it does not necessarily follow that collateralizing property in a usual way is necessarily for apparently carrying on in the usual way the business or affairs of a limited liability company.

property from Dan Lowe Construction, Inc., subject to a then existing debt.  That agreement is reflected not only in the Lowe/Amen, LLC Operating Agreement, which was signed by both Dan Lowe and Amen, but also the Modification of Mortgage, which was also signed by Dan Lowe and Amen.

In sum, the Court concludes that Amen's pledging of Lowe/Amen, LLC's property to secure his personal debt was not apparently for carrying on in the usual way the business of Lowe/Amen, LLC.  The Court similarly rejects Bar Nothing's argument that Amen's actions did not financially harm Lowe/Amen, LLC, and the apparent suggestion that absent any financial harm, Amen's actions could somehow morph into actions taken in the ususal way of business.

The next inquiry is whether Bar Nothing knew that Amen lacked the authority to bind Lowe/Amen, LLC.  The facts on this issue confront the Court with conflicting testimony and with choices about which witnesses to believe and give weight to with respect to what Bar Nothing knew and when.  Those determinations are discussed below.

Bar Nothing spent considerable time trying to convince this Court that Green was not at the April 6, 2010, meeting when Amen signed the Promissory Note.  Both Schwers and Amen testified that they questioned Green on April 6, 2010, regarding whether Amen had the authority to encumber Lowe/Amen, LLC's property.  Bar Nothing apparently believes that if it can convince this Court that Green was not at the meeting on April 6, 2010, then it follows that neither Amen nor Schwers could have questioned Green about Amen's authority to bind Lowe/Amen, LLC.  Considering the record as a whole, and as the Court will discuss below, that argument does not pass muster.

Green testified that he had several conversations with Bruce Fain about the deal between

18

Amen and Bar Nothing.  Valerie Cox also sent Bruce Fain two emails on January 25, 2010, along with a draft promissory note and trust indenture, which included Bar Nothing and Amen as parties, but not Lowe/Amen, LLC.  Valerie Cox did not send Bruce Fain a draft copy of a warranty deed.  Even though Green and Valerie Cox had corresponded with Bruce Fain, Amen testified that he did not hire an attorney to represent him with respect to the Bar Nothing debt and apparently by April 6, 2010, Green reached that same conclusion because he had Valerie Cox prepare a document, which Amen signed, stating that Amen was not represented by counsel.  *See* Exhibit L.  Moreover, Bruce Fain, a person who had at some point in time read the Lowe/Amen, LLC Operating Agreement, was not called as a witness to testify as to what he might or might not have told Green; nothing in the record suggests that Bruce Fain responded to Valerie Cox's emails.  What the record shows is that as of January 25, 2010, Green was contemplating a deal that required mortgage insurance and that property be transferred from Lowe/Amen, LLC to Amen.

Green also learned from Lowe/Amen, LLC's Articles of Organization, which were filed with the Montana Secretary of State, that Lowe/Amen, LLC was managed by its members. Green testified that it is his understanding that "the law is that any member of a member-managed limited liability company can sign any deed that transfers an interest in land" and that Dan Lowe did not need to sign the warranty deed.[3]  Nevertheless, as negotiations progressed, Green testified that he called Dan Lowe to "make sure Mr. Lowe knew what was going on."

---

[3]  With regard to the transfer of real property, MCA § 35-8-702 provides that "title to property of the limited liability company that is held in the name of the limited liability company may be transferred by an instrument of transfer executed by any member in the name of the limited liability company."

Green testified that he did not talk to Dan Lowe at that time, but instead left Dan Lowe a voice mail. Dan Lowe testified he never received a voice mail from Green.

Green also testified that be believed that Amen's authority to sign had been worked out between Bruce Fain, Dan Lowe and Amen. This testimony is interesting because Green understood under Montana law that Dan Lowe did not need to sign the warranty deed and, thus, no authority to sign needed to be work out.

Green next testified that he did not know exactly why Amen refused on April 6, 2010, to sign the documents that dealt with Lowe/Amen, LLC. While Green may not have been able to recall the reason at trial, his April 6, 2010, letter to Schwers clearly indicates that Amen did not sign because he wanted Dan Lowe's signatures. Green's April 6, 2010, letter corroborates Schwers's and Amen's testimony that they had questioned Green about Amen's ability to bind Lowe/Amen, LLC.

In addition, Bar Nothing's Exhibit W specifically reflects that Green gave an original copy of the draft trust indenture between Amen and Bar Nothing to Amen on April 6, 2010. The handwriting is Valerie Cox's and she testified that it would be her standard practice to put that note in the file on April 6, 2010, but, during her testimony, Valerie explained that she was bothered by that note, and in an attempt to "make any sense of it[,]" speculated that she might have been a day or two off, which might imply that Green gave a copy of the trust indenture to Amen on April 5, 2010. Valerie further muddied the waters when she later testified that maybe she actually wrote the note on April 15, 2010, which is not just a day or two off, but nine days off. Visibly flustered, Valerie Cox testified that she was "trying so hard" to "tell the truth." Based upon the exhibits, the Court concludes that Schwers and Amen questioned whether Amen

20

had the authority to bind Lowe/Amen, LLC on either April 5, 2010, or April 6, 2010.

As discussed above, Green testified that he had tried to call Dan Lowe to let him know what was going on and also believed that Amen, Dan Lowe and Bruce Fain had worked out Amen's authority to bind Lowe/Amen, LLC. Whether Amen had authority to act on Lowe/Amen, LLC's behalf was obviously on Green's radar prior to April 6, 2010. The parties agree and the record clearly reflects that Amen did not sign any documents involving Lowe/Amen, LLC on April 6, 2010. What transpired after April 6, 2010, is not completely clear, but the deal changed and Lowe/Amen, LLC's real property was not transferred to Amen. When the deal changed and Amen refused to sign the documents on April 6, 2010--because Amen wanted Dan Lowe's signatures-- Green, whose practice of law focuses primarily on business litigation, either knew or should have known that authority was now a primary issue.

Instead, Amen testified that Green convinced him that he could pledge Lowe/Amen, LLC's assets to secure personal debt because Dan Lowe had already done the same thing. Bar Nothing disputes this contention as well, arguing Valerie Cox did not learn of First Interstate Bank's mortgage until sometime in May of 2010, at which time she relayed that information to Green. The contradictory testimony on this point is troubling, but the scales tip in Amen's favor because Bar Nothing argues in its Post-Trial Brief that "mortgaging land is not unusual or extraordinary, particularly by the tenant and co-member of the owner. As noted, Lowe did the same thing himself." That argument is consistent with what Amen said he learned from Green, but is not accurate. Lowe/Amen, LLC, with the consent of 100% of its members, acquired its real property subject to an existing mortgage. However, Lowe did not unilaterally mortgage Lowe/Amen, LLC's property, particularly for personal debts.

21

Amen questioned his authority to sign any documents on behalf of Lowe/Amen, LLC and considering all the evidence as a whole, the Court finds that Green knew or should have known that Amen lacked the authority to encumber Lowe/Amen, LLC's property. Therefore, under MCA § 35-8-301, Amen's actions on April 23, 2010, do not bind Lowe/Amen, LLC.

### Reformation

Bar Nothing also asks this Court to reform the April 23, 2010, Trust Indenture to reflect the intention of the parties. If the Court would have concluded that Amen had authority to bind Lowe/Amen, LLC, which the Court found he did not, it would deny Bar Nothing's request for reformation.

Reformation is governed by MCA § 28-2-1611, which provides:

> **When written contract may be revised by court**. When, through fraud or a mutual mistake of the parties or a mistake of one party while the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

*Estate of Irvine v. Oaas*, 2013 MT 271, ¶ 14, 372 Mont. 49, 309 P.3d 986; *E.H Oftedal & Sons v. State*, 2002 MT 1, ¶ 47, 308 Mont. 50, 40 P.3d 349.

The Montana Supreme Court wrote:

> A court is not limited only to correcting errors in the language of the instrument, but may inquire into the intended meaning and effect of the instrument. Section 28–2–1613, MCA. The mutual intent of the parties serves as the standard from which the instrument may be reformed. *Sullivan v. Marsh,* 124 Mont. 415, 422, 225 P.2d 868, 872 (1950). A court may not, therefore, create a " 'new and different' " contract or make " 'significant additions.' " *Rogers v. Relyea*, 184 Mont. 1, 10, 601 P.2d 37, 42 (1979) (quoting S*ullivan*, 124 Mont. at 422, 225 P.2d at 872).

*Estate of Irvine v. Oaas*, 2013 MT at ¶ 14.

In the case *sub judice*, Bar Nothing asks the Court to reform the Trust Indenture to reflect the intentions of the parties. Amen and Bar Nothing intended that Bar Nothing have a security interest in Lowe/Amen, LLC's property. Lowe/Amen, LLC, however, never intended to grant Bar Nothing a security interest in its real property. The intentions of the parties to the Trust Indenture, namely Bar Nothing and Lowe/Amen, LLC, are irreconcilable, and thus, reformation is not a proper remedy in this case.

### The Estate's After-Acquired Interest

Finally, Bar Nothing argues that any defects in the Trust Indenture were cured once Debtors' bankruptcy estate acquired an interest in Parcel A pursuant to the Trustee's October 1, 2013, Settlement Agreement and Release between Lowe Property Holdings, LLC, Lowe/Amen, LLC, Womack, and Lazy JC Ranch, LLC. The Court disagrees.

MCA § 70-21-303 reads as follows:

> Further, every conveyance and/or encumbrance of real property acknowledged or proved and certified and recorded as prescribed by law and which is executed by one who thereafter acquires an interest in the real property by a conveyance which said conveyance is constructive notice as aforesaid is, from the time such latter conveyance is filed with the county clerk for record, constructive notice of the contents of such earlier conveyance and/or encumbrance to subsequent takers, purchasers, mortgagees, or other encumbrancers or transferees.

Amen was not the grantor of the Trust Indenture who then later acquired an interest in the real property. Lowe/Amen, LLC was the grantor of the Trust Indenture. MCA § 70-21-303 simply has no applicability to the facts of this case. For the reasons stated above,

IT IS ORDERED that the Court will enter a separate judgment in favor of the Plaintiff, Joseph V. Womack, as Chapter 7 Trustee of the Estate of Michael A. Amen and Cheryll K. Amen and against Bar Nothing Ranch Partnership; the "Montana Trust Indenture" between Lowe/Amen,

LLC and Bar Nothing Ranch Partnership dated the 23rd day of April, 2010, and admitted into evidence as Exhibit 2, shall be removed from the Yellowstone County records and otherwise held cancelled, void, unenforceable and of no effect; and Plaintiff's Objection to Bar Nothing's Proof of Claim No. 8 is sustained and Proof of Claim No. 8 shall be allowed as a general unsecured, nonpriority claim in the amount of $247,406.94.

IT IS FURTHER ORDERED that each party shall bear its own attorneys' fees and costs incurred in this adversary proceeding.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

24